```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

SHAWN GREEN,

            Petitioner,

**DECISION AND ORDER**
**No. 10-CV-06662(MAT)**

   -vs-

MARK L. BRADT,

            Respondent.

_____

## I. Introduction

*Pro se* Petitioner Shawn Green ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the instant petition, Petitioner challenges the constitutionality of four Tier II prison disciplinary hearings held at Elmira Correctional Facility on July 8, September 16, October 23, and December 18, 2008, respectively, in which he was found guilty of all charges and sentenced to serve time in keeplock, with corresponding loss of commissary and telephone privileges.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

### A. The July 8, 2008 Disciplinary Determination

On July 5, 2008, Correction Officer ("C.O.") Masti was assigned to monitor the front entrance door to mess hall II at

Elmira Correctional Facility. During that time, Petitioner came out of mess hall I and stood near C.O. Masti. There were approximately 40 other inmates in the hallway. C.O. Masti repeatedly ordered Petitioner to move back into mess hall I area, but Petitioner refused and continued to stand at the mess hall II area. C.O. Masti then ordered Petitioner to produce his identification card, and Petitioner replied that he had left it in his cell. C.O. Masti then conducted a pat frisk on Petitioner and found Petitioner's identification card in his left hand. C.O. Masti prepared an Inmate Misbehavior Report that same day, charging Petitioner with violating rules of inmate behavior 106.10 (refusing a direct order), 107.20 (lying), and 109.12 (refusal to follow movement directions). See Resp't Ex. E at Ex. O (Inmate Misbehavior Report).

### 1. The Tier II Disciplinary Hearing

On July 8, 2008, a Tier II disciplinary hearing[1] was conducted by Hearing Officer Lieutenant Schornsteimer. The hearing officer read Petitioner his rights and obligations, which Petitioner stated that he understood. The hearing officer then read the misbehavior

---

[1] Inmates incarcerated in prisons operated by NYS DOCS must comply with certain standards of conduct, which are enforced through issuance of inmate misbehavior reports in those instances where a rule violation endangers life, health, security or property. These reports are subject to review at an administrative hearing at which a hearing officer determines the truth of the allegations and imposes penalties accordingly. There are three levels of administrative hearings -- tier I (violation hearing), tier II (disciplinary hearing) and tier III (superintendent's hearing) -- with differing requirements for each. See Matter of Criscolo v. Vagianelis, 12 N.Y.3d 92, 93 (2009).

report into the record, and Petitioner pleaded not guilty to the charges.  Trans. of 07/08/08 1.

Petitioner testified that he did not hear C.O. Masti's order to return to the mess hall I area.  Id. at 1-2.  Petitioner testified that he heard C.O. Masti order him to produce his identification card, and Petitioner responded that the card was in his cell.  Id. at 2.  C.O. Masti then pat frisked Petitioner, and, at that time, Petitioner claimed that he found the card in his left pocket and gave it to the officer.  Id. at 1.

### 2. The Disposition

In a written disposition dated July 8, 2008, the hearing officer found Petitioner guilty of making false statements, refusing a direct order, and a movement regulation violation. See Resp't Ex. E at Ex. R (Disciplinary Hearing Disposition).  The hearing officer imposed a penalty of 30 days in keeplock, with corresponding loss of commissary and telephone privileges.  Id.

### 3. The Administrative Appeal

Petitioner administratively appealed the results of the disciplinary hearing, claiming that: (1) the hearing officer was biased; and (2) there was insufficient evidence to support the disposition.  See Resp't Ex. E at Ex. S.  On July 11, 2008, the hearing officer's determination was affirmed.  See Resp't Ex. E at Ex. T (NYS DOC Appeal Form).

### B.  The September 16, 2008 Disciplinary Determination

On September 11, 2008, Petitioner had gone through the metal detectors outside of the correctional facility's print shop when C.O. Rosemark randomly selected Petitioner to conduct a pat frisk. During the pat frisk, C.O. Rosemark ordered Petitioner to remove his kufi; Petitioner refused, yelling, "I don't have, I don't have to take my kufi off for a pat risk!"[2] C.O. Rosemark then explained to Petitioner that a kufi could be searched as part of a pat frisk, and Petitioner replied, "you want it off, you take it off!"  C.O. Rosemark ordered Petitioner to remove his kufi several more times, and Petitioner eventually did so.  Approximately 15 inmates stopped to observe the commotion, delaying the progress of the pat frisk line.  That same day, C.O. Rosemark prepared an Inmate Misbehavior Report, charging Petitioner with violating rules of inmate behavior 106.10 (refusing a direct order), 115.10 (failure to follow frisk procedure), and 104.13 (creating a disturbance).  See Resp't Ex. E at Ex. U (Inmate Misbehavior Report).

### 1.  The Tier II Hearing

On September 16, 2008, a Tier II disciplinary hearing was conducted by Hearing Officer Lieutenant Schornsteimer.  The hearing officer read Petitioner his rights and obligations, which Petitioner said he understood.  The hearing officer then read C.O.

---

[2] In its Memo. of Law, Respondent states that, "[a] kufi is a brimless, short, rounded cap that is worn by African people, or people of African descent, of all religions."  Resp't Mem. of Law at 4, n.4.

Rosemark's misbehavior report into the record, and Petitioner pleaded not guilty to the charges. Trans. of 09/16/08 1-2.

Petitioner testified that on September 11, 2008, he was pat frisked by C.O. Rosemark after he went through the metal detectors. Id. at 3. Petitioner claimed that C.O. Rosemark merely requested that Petitioner remove his kufi, and that the officer did not directly order Petitioner to do so. Id. at 4-5. In response, Petitioner asked C.O. Rosemark the reason for his "request," as Petitioner claimed to have been pat frisked numerous times without having to remove his kufi. Id. Petitioner argued that directive 4910, which requires inmates to remove their coats and hats during a pat frisk, did not apply to kufis because it is "a religious garment." Id. at 6, 8. Petitioner denied that he yelled or shouted during the incident. Id. at 7.

C.O. Williams testified that he was present at the time of the incident and heard C.O. Rosemark order Petitioner to remove his kufi. Id. at 10-11. C.O. Williams testified that Petitioner loudly refused C.O. Rosemark's orders. Id. at 13, 17. Officer Williams stated that Petitioner then demanded that C.O. Rosemark remove Petitioner's kufi for him. Id. at 18. In response, C.O. Rosemark again ordered Petitioner to remove his kufi, and Petitioner finally complied with the order.

After C.O. Williams's testimony, Petitioner accused the hearing officer of being biased. According to Petitioner, the

hearing officer had unfairly refused to allow Petitioner to ask C.O. Williams whether he routinely required an inmate wearing a kufi to remove it during a pat frisk.  Id. at 20-23.  The hearing officer responded that he was being impartial and that whether or not other officers did or did not require the removal of a kufi during a pat frisk was irrelevant to the charges alleged in the misbehavior report.  Id. at 20-21.

C.O. Rosemark testified that there was no question that he gave Petitioner a direct order to remove his kufi during the pat frisk.  Id. at 27.  C.O. Rosemark further testified that the reason why he requested that Petitioner remove the kufi is "because underneath the Kufi could be potentially a weapon, drugs, anything, that's why it's common knowledge that Officers will have inmates take their Kufi off for a pat frisk."  Id. at 29.

### 2. The Disposition

In a written disposition dated September 16, 2008, the hearing officer found Petitioner guilty of creating a disturbance, refusing a direct order, and refusing search procedures.  See Resp't Ex. E at Ex. X (Disciplinary Hearing Disposition).  The hearing officer imposed a penalty of 5 days of pre-hearing confinement in keeplock, together with 30 additional days of keeplock and corresponding loss of commissary and telephone privileges.  Id.

### 3.  **The Administrative Appeal**

Petitioner administratively appealed the results of the disciplinary hearing, arguing that: (1) the hearing officer was biased; (2) the evidence was insufficient to support the hearing officer's findings; (3) the hearing officer denied Petitioner's right to call witnesses; (4) the hearing officer denied Petitioner's right to request documents; and (5) the sanctions imposed were excessive and severe. See Resp't Ex. E at Ex. Y. On September 26, 2008, the hearing officer's determination was affirmed. See Resp't Ex. E at Ex. Z (NYS DOCS Appeal Form).

### C.  **The October 23, 2008 Disciplinary Determination**

On October 20, 2008, C.O. Bailey saw Petitioner and another inmate yelling at each other.  As C.O. Bailey approached the inmates, Petitioner and the inmate began to punch each other. Petitioner initiated the physical altercation. C.O. Bailey ordered both inmates to stop fighting, but they refused.  Petitioner and the other inmate then grabbed each other and fell to the ground. C.O. Bailey continued to order them to stop fighting, and eventually they complied.  That same day, C.O. Bailey wrote a misbehavior report charging Petitioner with violating rules of inmate behavior 106.10 (refusing a direct order) and 100.13 (fighting).  See Resp't Ex. E at Ex. AA (Inmate Misbehavior Report).

**1.    The Tier II Hearing**

On October 23, 2008, a Tier II disciplinary hearing was conducted by Hearing Officer Lieutenant Schornstheimer. The hearing officer read Petitioner his rights and obligations, which Petitioner said he understood. The hearing officer then read C.O. Bailey's misbehavior report into the record, and Petitioner pleaded guilty to the charge of fighting and not guilty to refusing a direct order. Trans. of 10/23/08 1-2.

Petitioner testified that he had a fight with another inmate and that it escalated into a physical altercation. Id. at 2. Petitioner denied hearing C.O. Bailey's order to stop fighting. Id. at 2. The hearing officer asked Petitioner if he wished to add anything, and Petitioner said no. Id. at 2-3. The hearing officer asked Petitioner if he felt that the hearing officer was doing anything wrong, to which Petitioner responded in the negative. Id. at 3.

**2.    The Disposition**

In a written disposition dated October 23, 2008, the hearing officer found Petitioner guilty of fighting and refusing a direct order. See Resp't Ex. E at Ex. DD (Disciplinary Hearing Disposition). The hearing officer imposed a penalty of 30 days in keeplock, with corresponding loss of commissary and telephone privileges. Id.

### 3.    The Administrative Appeal

Petitioner administratively appealed the results of the disciplinary hearing, arguing that (1) the hearing officer was biased, and (2) the penalty imposed was excessive and severe. See Resp't Ex. E at Ex. EE.  On October 29, 2008, the hearing officer's determination was affirmed.  See Resp't Ex. E at Ex. FF (NYS DOCS Appeal Form).

### D.    The December 18, 2008 Disciplinary Determination

On December 13, 2008, C.O. Chimileski was observing inmates on the gym floor and saw Petitioner sitting on the floor watching a movie.  C.O. Chimileski ordered Petitioner to remove his hood. When C.O. Chimileski returned to his post, Petitioner had put his hood back on.  C.O. Chimileski walked back to where Petitioner was sitting and again ordered Petitioner to remove his hood. Petitioner became argumentative, responding to the order by stating, "I am going to catch cold."  C.O. Chimileski then ordered Petitioner to go to the gym office, and Petitioner ignored the order.  Petitioner only complied after C.O. Chimileski ordered him to go to the office several more times.  That same day, C.O. Chimileski wrote a misbehavior report, charging Petitioner with violating rules of inmate behavior  106.10 (refusing a direct order) and 107.10 (interference).  See Resp't Ex. E at Ex. GG (Misbehavior Report).

### 1. The Tier II Hearing

On December 18, 2008, a Tier II disciplinary hearing was conducted by Hearing Officer Lieutenant Schornstheimer. Petitioner was read his rights and obligations, which he stated he understood. The hearing officer then read C.O. Chimileski's misbehavior report into the record, and Petitioner pleaded guilty to the charges. Trans. of 12/18/08 1, 5-6.

Petitioner testified that: (1) he did not interfere with C.O. Chimileski's duties because he did not approach the officer or interrupt him; and (2) the second time that C.O. Chimileski ordered Petitioner to take off his hood, the hood was not on Petitioner's head, but was only "around [his] head." Id. at 2-5. Petitioner denied arguing with C.O. Chimileski the second time the officer ordered Petitioner to remove his hood. Id. at 5. Petitioner testified that he could not have refused C.O. Chimileski's direct order to go to the gym office because he ultimately complied with the C.O.'s order. Id. at 6. When the hearing officer asked Petitioner whether he obeyed the first order, Petitioner responded that he was only trying to figure out why he was being asked to report to the office. Id. at 6-7. Petitioner complained that the hearing officer was biased. Id. at 3-4.

### 2. The Disposition

In a written decision dated December 18, 2008, the hearing officer found Petitioner guilty of refusing a direct order and

interference.  See Resp't Ex. E at Ex. JJ.  The hearing officer imposed a penalty of 5 days of pre-hearing confinement in keeplock, together with 30 additional days in keeplock and corresponding loss of commissary and telephone privileges.  Id.

### 3. The Administrative Appeal

Petitioner administratively appealed the results of the disciplinary hearing, arguing that: (1) the hearing officer was biased; (2) the evidence was insufficient to sustain the hearing officer's findings; (3) the hearing officer refused to produce a document setting forth the facility's "hood policy"; and (4) the penalty imposed was excessive and severe.  See Ex. E at Ex. KK.  On December 24, 2008, the hearing officer's determination was affirmed.  See Resp't Ex. E at Ex. LL (NYS DOCS Appeal Form).

### E. The Article 78 Proceeding

Petitioner, acting *pro se*, initiated an Article 78 proceeding in the Supreme Court, Chemung County, by filing a Verified Petition on July 30, 2008, challenging, *inter alia*, the results of the first Tier II hearing held on July 8, 2008.  See Resp't Ex. A. Petitioner argued that his "rights to a fair/impartial hearing supported by substantial evidence and imposition of necessary/reasonably disciplinary sanctions were violated." Id. After the second Tier II hearing held on September 16, 2008, Petitioner filed an Amended Verified Petition challenging the results of that hearing, arguing that his "rights to fair/impartial

hearings supported by substantial evidence, present witnesses, evidence or reply thereto any and imposition of necessary/reasonable/valid disciplinary sanctions were violated." Resp't Ex. B. On January 6, 2009, Petitioner filed a Supplemental Verified Petition in which he challenged the results of the October 23 and December 18, 2008 Tier II hearings. He argued that that the hearing officer was impartial, the evidence was insufficient, and the penalties imposed were excessive and severe. See Resp't Ex. D.

Respondent answered Petitioner's pleadings and requested that the Article 78 proceeding be transferred to the Appellate Division, Fourth Department, pursuant to N.Y. C.P.L.R. § 7804(g).[3] Petitioner filed a reply and a notice of motion, alleging that there were omissions in the record. See Resp't Ex. E. In an Order of Transfer dated June 22, 2009, the county court ordered the Article 78 proceeding to be transferred to the Appellate Division,

---

[3]   C.P.L.R. § 7804(g) provides:

   Where the substantial evidence issue specified in question four of section 7803 is not raised, the court in which the proceeding is commenced shall itself dispose of the issues in the proceeding. Where such an issue is raised, the court shall first dispose of such other objections as could terminate the proceeding, including but not limited to lack of jurisdiction, statute of limitations and res judicata, without reaching the substantial evidence issue. If the determination of the other objections does not terminate the proceeding, the court shall make an order directing that it be transferred for disposition to a term of the appellate division held within the judicial department embracing the county in which the proceeding was commenced. When the proceeding comes before it, whether by appeal or transfer, the appellate division shall dispose of all issues in the proceeding, or, if the papers are insufficient, it may remit the proceeding.

Fourth Department, pursuant to C.P.L.R. § 7804(g) for disposition, and denied Petitioner's motion. See Resp't Ex. G.

In a *pro se* appellate brief filed August 31, 2009, Petitioner argued, *inter alia*, that: (1) the evidence submitted at the first, second, and fourth Tier II hearings was legally insufficient; and (2) the hearing officer who presided over all four Tier II hearings was biased. See Resp't Ex. H.

In a decision dated January 28, 2010, the Appellate Division, Fourth Department affirmed the administrative determinations and dismissed the Article 78 petition in its entirety. See People v. Green, 69 A.D.3d 1269 (4th Dep't 2010) (Resp't Ex. K).

Petitioner, acting *pro se*, filed a motion for leave to appeal the Appellate Division's denial of the Article 78 petition in the New York Court of Appeals, requesting that the court review all issues raised in Petitioner's appellate brief. See Resp't Ex. L. Leave to appeal was denied on May 6, 2010. People v. Green, 14 N.Y.3d 710 (2010) (Resp't Ex. N).

### F.   The Federal Habeas Corpus Petition

On November 19, 2010, Petitioner filed the instant habeas corpus petition, wherein he seeks relief on the basis that, in the first, second and fourth proceedings, there was insufficient evidence to substantiate the charges. Specifically, he argues that: (1) the hearing officer erred in crediting the evidence in the misbehavior reports and the testimony of the correction

officers rather than Petitioner's defenses; (2) the description of the incident in the first misbehavior report failed to substantiate the charges and corroborated Petitioner's defenses; (3) the description of the incident in the fourth misbehavior report failed to substantiate the refusal to obey a direct order charge; (4) C.O. Chimileski's statements in the fourth misbehavior report should have been rejected as he had subjected Petitioner to arbitrary harassment; (5) the absence of a written police to substantiate the refusal to follow movement directions charge in the first proceeding, or the charges in the second proceedings relating to Petitioner's refusal to remove his kufi, mandated dismissal of those charges; and (6) in the second proceeding, C.O. Rosemark's hearing testimony should have been rejected as incredible.

Petitioner further argues that hearing officer Lieutenant Schornstheimer, who conducted all four hearings, was biased and prejudged the evidence, as evidenced by: (1) all four misbehavior reports contained insufficient evidence to substantiate the charges; (2) the hearing officer made biased comments in the first, second, and fourth proceedings; and (3) in the third proceeding, the hearing officer could not have considered Petitioner's defense because the officer was biased in the first two proceedings. See Pet. & Mem. of Law (Dkt. No. 1); see also Traverse at 4-11 (Dkt. No. 10).

**II.   Discussion**

**Petitioner's Claims are Not Cognizable on Habeas Review**

All of the claims raised in the instant habeas petition pertain to the punishments meted out by the hearing officer at the close of the four disciplinary hearings, to wit: confinement in keeplock and loss of commissary and telephone privileges. To obtain a federal writ of habeas corpus, a state prisoner must show that he or she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006). In this respect, challenges to the validity of prison administrative actions that affect the fact or length of a prisoner's confinement -- such as revocation of good time credits -- are properly brought under 28 U.S.C. § 2254. Preiser, 411 U.S. at 491-492, 500. This is not the case here. Petitioner's confinement in keeplock and the corresponding loss of his commissary and telephone privileges did not affect the overall length of his confinement; rather, the punishment altered the conditions of his confinement. Petitioner's claims, therefore, which challenge the conditions of his confinement rather than the length of his confinement, are not cognizable on federal habeas review. Accord e.g., Stallone v. Fischer, No. 10-CV-0615(MAT), 2011 U.S. Dist. LEXIS 121884, *17

(W.D.N.Y. Oct. 21, 2011) (finding Petitioner's claim challenging imposition of confinement in special housing unit not cognizable on federal habeas review because said claim challenged change in conditions of Petitioner's confinement rather that duration of his confinement); Gonzalez v. Lempke, 09-CV-6423-CJS, 2010 U.S. Dist. LEXIS 4380, *3, n.1 (W.D.N.Y. Jan. 20, 2010) ("Petitioner raises three other grounds, but all concern conditions of confinement, thus, are not cognizable under 28 U.S.C. § 2254.") (citing Preiser, 411 U.S. at 485); Welch v. Mukasey, 589 F. Supp. 2d 178, 183 n.3 (N.D.N.Y. 2008) ("Welch also alleges that he is being illegally confined in the Special Housing Unit . . ., he is not being protected against 'serious physical injury,' and his food is being 'contaminated/poisoned' in furtherance of the conspiracy which is at the heart of his petition . . . . Those claims, to the extent that they challenge conditions of confinement, are not cognizable on habeas review); see also Adams v. McGinnis, 317 F.Supp.2d 243, 244 (W.D.N.Y. 2004) ("Based upon the allegations that petitioner was sentenced to six months SHU, but nothing else -- e.g., loss of good time credits -- this action appears to be one that should have been brought under 42 U.S.C. § 1983, and not 28 U.S.C. § 2254, because the disciplinary sentence challenged herein does not impact the overall length of the plaintiff's confinement on his state court criminal conviction.") (citations omitted).

Accordingly, Petitioner's claims are dismissed.

### III. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

---
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: January 17, 2012
       Rochester, New York